# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

> **FILED**
> **Aug 29, 2024**
> CLERK, U.S. DISTRICT COURT
> EASTERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  2:24-mj-00099 SCR |
| | ) | |
| RICHARD LEE DAZO | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___August 13, 2024___ in the county of ___Yolo___ in the ___Eastern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. § 922(g) (2 counts)** | **Felon in possession of a firearm and ammunition** |

This criminal complaint is based on these facts:

(see attached affidavit.)

☒ Continued on the attached sheet.

|  |
|---|
| /s/ William Silvermaster |
| *Complainant's signature* |
| William Silvermaster, Task Force Officer, Federal Bureau of Investigation |
| *Printed name and title* |

Sworn to me and signed via telephone.

Date: ___August 29, 2024___

City and state: ___Sacramento, California___

|  |
|---|
| *Judge's signature* |
| Jeremy D. Peterson, U.S. Magistrate Judge |
| *Printed name and title* |

I.      **AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT**

I, William Silvermaster, Task Force Officer, Federal Bureau of Investigation, being duly sworn, state:

II.      **INTRODUCTION**

1.      I submit this affidavit in support of a criminal complaint charging Richard Lee DAZO, with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, law enforcement agencies, and witnesses.  This affidavit does not set forth all my knowledge about this matter; it is intended to only show that there is sufficient probable cause for the requested warrant.

III.      **AFFIANT BACKGROUND**

3.      I am a Detective with the West Sacramento Police Department and have been a sworn peace officer since January 2017.  I am currently assigned to the Special Investigations Unit.  In addition, I am a Task Force Officer assigned to the FBI's Safe Streets Task Force.  During my assignment with the FBI, I have participated in training and investigations related to the possession and manufacture of firearms in violation of Titles 18 and 26 of the United States Code as well as the possession and distribution of controlled substances in violation of Title 21 of the United States Code. As a peace officer, I have conducted and participated in numerous investigations involving the criminal possession of firearms, including, pistols, shotguns, and rifles.  I am familiar with firearms through training and investigations into criminal street gangs, drug trafficking organizations, and firearm trafficking organizations.

4.      Based on such training and investigations, as well as discussions with other law enforcement personnel, I have become familiar with the methods used by firearms and narcotics traffickers to distribute, smuggle, safeguard, and store firearms and narcotics.  I have also become familiar with various investigative techniques, including surveillance, interviews, and the execution of search and arrest warrants.  Throughout my law enforcement career, I have attended trainings and conducted investigations relating to criminal street gangs, violent crimes, firearms, controlled

1

substances, and other areas of law enforcement.  I have received training in various means by which persons involved various types of criminal activities use telephones, computers, buildings, storage units, residences, businesses, and other structures to conceal their activities from law enforcement.  I have become familiar with the types and amounts of profits made by firearms/drug dealers, the methods, language, and terms that are used. I have received both informal and formal training pertaining to firearms and drug/narcotics investigations.

5.      In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; (2) conversations with other law enforcement officers including oral and written investigative reports that I received directly or indirectly from other law enforcement officials; (3) a review of driver's license and automobile registration records; (4) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (5) my training and experience as a police detective and TFO with the FBI and/or; (6) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

## IV.      PROBABLE CAUSE

6.      On August 13, 2024, detectives with the West Sacramento Police Department conducted a probation search of Richard DAZO at his residence of 920 West Capitol Ave., Room 31 (Flamingo Motel), located in the Eastern District of California.  DAZO and his girlfriend, Jessica KOLLMAN, both lived here.  DAZO was on Post Release Community Supervision (PRCS) and had a search clause for his person, residence, and electronic devices.  Detectives knocked on the motel room door and heard a voice from inside ask who was at the door.  Detectives used a ruse to get DAZO to open the door and, once opened, they observed DAZO standing there.  At the time, DAZO was the only person who was in the motel room.  Detectives detained him and entered the room to check it for other occupants before beginning their search.  The room was a small studio-sized motel room, approximately 250 square feet, with one bathroom.  There was a bed on the south wall of the room and a small bunk bed on the north wall of the room.  The bottom bunk had a mattress while the top bunk did not have one.  When I entered

2

the room, I noticed a gun in plain view on the bed.  It was a silver stainless steel revolver with a black grip.  Detective Ogden could see that there was live ammunition in the firearm.  I opened the cylinder and took out six (6) live rounds of ammunition.  I could hear DAZO from outside the room say that the gun was fake.  Upon inspection, the firearm was a CO2-powered pellet gun.  Four (4) of the rounds of ammunition were .357 magnum and two (2) rounds were .38 special.

7.      On the bottom of the bunk bed, there was a long black bag with zipper.  I opened the bag and located a black Remington 870 12-gauge shotgun with a 16-inch barrel.  There were no rounds in the chamber, but there were five (5) rounds of 12-gauage shotgun shells in the magazine.  Officer Killion located two (2) more live shotgun shells in the room.  Detectives placed DAZO under arrest.

8.      While completing the search, KOLLMAN arrived at the motel room.  She stated that everything in the room was hers.  She said she had bought a storage unit and the guns were inside the unit.  She said she brought the guns to the room because she did not know what to do with them.  When asked what storage company she bought the unit from, she did not know.  When asked further questions by detectives about the storage unit, she changed her answers about she found it and, ultimately, detectives determined that she was not being truthful.

9.      DAZO was interviewed by Detective Ogden after waiving his *Miranda* rights.  When told he was under arrest for the firearms and ammunition (as well as narcotics that were located in the room), DAZO said, didn't she say it was hers (KOLLMAN).  When asked to confirm that he was saying the contraband was KOLLMAN's, DAZO kept saying it was not his.  When asked about the revolver, DAZO said he was sleeping.  When asked if he was sleeping next to the revolver, he said he was sleeping on the other bed (the bunk bed).  When asked if he was sleeping on the bed next to the bag containing the shotgun, he changed his story and said he was sleeping on the floor.  He denied knowing the firearms were in the room and denied knowing where they came from.  He was asked how he knew the revolver was fake and he said he did not know it was there.  DAZO said he thought it was a kid's toy.  He denied knowing there was live ammunition in the revolver.

10.     When asked about the shotgun, DAZO denied knowing it was there and said it was there because KOLLMAN said it was hers.  When asked if his DNA was going to be on the guns and

AFFIDAVIT

1   ammunition, he said no, I don't know.

2         11.    ATF Special Agent (SA) Matthew Garrett, who is a firearms interstate nexus expert,

3   reviewed the reports and photographs related to the Remington Model 870 shotgun (S/N AB28803(?)M)

4   and based on his knowledge and experience, he determined this firearm was manufactured by

5   Remington in New York, Kentucky, or Georgia.  SA Garrett concluded that the shotgun is a "firearm" as

6   defined in Title 18, United States Code, Chapter 44, Section 921(a)(3), and was not manufactured in the

7   State of California.  It was his opinion that if this firearm was received and/or possessed in the State of

8   California, it traveled in or affected interstate and/or foreign commerce.

9         12.    SA Garrett reviewed reports and photographs related to the thirteen (13) rounds of

10   ammunition located in the motel room and determined that each round was not manufactured in

11   California.  SA Garrett concluded that the rounds are "ammunition" as defined by Title 18, United States

12   Code, Chapter 44, Section 921(a)(17)(a).  It was his opinion that if this ammunition was received and/or

13   possessed in the State of California, it traveled in or affected interstate and/or foreign commerce

14         13.    On August 27, 2024, I conducted a function-check on the Remington 870 and found it

15   was a functional firearm.

16         **B.**    **Prior Convictions by Richard Lee Dazo**

17         14.    I learned through a criminal history records check that Richard Lee DAZO was a

18   previously convicted felon and prohibited from possessing firearms or ammunition.  I reviewed Richard

19   Lee DAZO's criminal history and confirmed his prior felony convictions included:

20   - A 2006 felony conviction in Yolo County for a violation of California Penal Code § 496(a) –

21      Receive/Etc Known Stolen Property;

22   - A 2008 conviction in Yolo County for a violation of California Penal Code § 12020(a)(4) –

23      Carry Concealed Dirk or Dagger;

24   - A 2009 conviction in Yolo County for a violation of California Penal Code § 245(a)(1) –

25      Force/ADW Not Firearm: GBI Likely; and, California Penal Code § 186.22(b)(1) – Street Gang

26      Act;

27   - A 2014 conviction in San Bernardino County for a violation of California Penal Code §

28

4

29800(a)(1) – Felon/Addict Poss/Etc Firearm;

- A 2021 conviction in Yolo County for a violation of California Penal Code § 29800(a)(1) – Felon/Addict Poss/Etc Firearm;

- A 2023 conviction in Yolo County for a violation of California Penal Code § 21810 – Mfg/Sale/Possess/Etc Metal Knuckles.

15.     The aforementioned offenses were punishable by imprisonment for more than one year. Richard Lee DAZO was sentenced to more than one year of imprisonment for each of these convictions, including 32 months in California state prison for each of his felon in possession of a firearm convictions.

16.     DAZO was on Post-Release Community Supervision with the Yolo County Probation Department at the time of this incident.

17.     Therefore, DAZO, knew at the time that he possessed the firearm that he had been convicted of an offense punishable by more than one year in prison.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5

## V.    <u>CONCLUSION</u>

18.    The above facts set forth probable cause to believe that Richard Lee DAZO violated Title 18, United States Code, Section 922(g)(1), felon in possession of a firearm and felon in possession of ammunition.  I request that an arrest warrant be issued for Richard Lee DAZO for this violation.

Respectfully submitted,

/s/ William Silvermaster
William Silvermaster
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to me
telephonically on:

August ___29___, 2024

Hon. Jeremy D. Peterson
U.S. MAGISTRATE JUDGE

/s/ Matthew De Moura
Approved as to form by SAUSA MATTHEW DE MOURA

6

AFFIDAVIT

**United States v. Richard Dazo**
**Penalties for Indictment**

**Defendant**

**Richard DAZO**

**COUNT 1:**

VIOLATION:        18 U.S.C. § 922(g) - Felon Possession of Firearm

PENALTIES:        Not more than 15 years in prison; or
Not more than $250,000 fine; or both fine and imprisonment; and
Supervised release of up to three years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**

VIOLATION:        18 U.S.C. § 922(g) - Felon Possession of Ammunition

PENALTIES:        Not more than 10 years in prison; or
Not more than $250,000 fine; or both fine and imprisonment; and
Supervised release of up to three years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**

VIOLATION:        18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c) - Criminal Forfeiture